# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

Kirby Miles, *et al.*,

      Plaintiffs,

      v.

Village of Dolton, *et al.*,

      Defendants.

Case No. 15 CV 5017

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

Plaintiffs Lilah's, Inc. Restaurant and Kirby Miles (the sole shareholder of Lilah's), bring suit under 42 U.S.C. § 1983 against the Village of Dolton and four police officers employed by the Dolton Police Department. Plaintiffs assert the following claims: (1) violation of Substantive Due Process under the 14th Amendment; (2) unreasonable seizure under the 4th Amendment; (3) violation of Procedural Due Process under the 14th Amendment; (4) retaliation in violation of the 1st Amendment; and (6) indemnification under 745 ILCS 10/9-102. Defendants move to dismiss all counts under Federal Rule of Civil Procedure 12(b)(6). [16]. That motion is granted in part and denied in part as explained below.

## I.    Background[1]

Lilah's Restaurant ("Lilah's") is located in Dolton, Illinois, and is also incorporated in Illinois. Am. Compl. ¶ 5. Plaintiff Kirby Miles ("Miles") is the sole owner and shareholder of Lilah's, and derives income from Lilah's liquor sales, food

---

[1] The Background Section is based on the factual allegations in Plaintiffs' Amended Complaint. [14].

sales, and other business activities. *Id.* ¶¶ 5, 9, 10. On March 15, 2015, Lilah's was open for business, with many guests on the premises eating and drinking. *Id.* ¶ 11. At around 12:45 a.m., Defendants Sergeant Lacy, Officer Harris, Officer Johnson, and Officer Staples (the "Officers") entered Lilah's. *Id.* ¶¶ 6, 12. Plaintiffs allege that the Officers did not like Plaintiff Miles' "attitude" and arbitrarily ordered him to "close Lilah's for the remainder of the night." *Id.* ¶ 12. In response, Miles protested and asked the reason for the Officers' request. *Id.* ¶ 13. Plaintiffs allege that the Officers became enraged and requested that Miles provide his licenses to sell liquor at Lilah's. *Id.* ¶ 13. Miles complied with the Officers' orders, giving them his State of Illinois Liquor License and Village of Dolton Liquor License (the "Licenses"). *Id.* ¶¶ 13, 14. The Officers then confiscated the Licenses and issued Plaintiff Miles a "ticket." *Id.* ¶¶ 15, 31. Plaintiffs allege that the confiscation was without due process and precluded Miles from reopening Lilah's, thus causing Plaintiffs financial and emotional harm. *Id.* ¶¶ 15, 24. On March 17, 2015, the Officers returned the Licenses to Miles, allowing him to resume business. *Id.* ¶¶ 16, 17.

Additionally, the Court takes judicial notice of an administrative decision by the Village of Dolton upholding a noise violation citation issued to Plaintiff Miles based upon the events of March 15, 2015. *Ray v. City of Chicago*, 629 F.3d 660, 665 (7th Cir. 2011) ("it is well established that district courts may take judicial notice of certain documents—including records of administrative actions—when deciding motions to dismiss"). The citation was for "excessive noise" in violation of 625 ILCS

5/11-208.3 and the Village Code of Dolton. *See* Def.'s Ex. 1. It was issued at 14908 Chicago Road, the address of Lilah's. *Id.* The violation was upheld during an administrative hearing on September 8, 2015. *Id.*

## II.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), this Court must construe the Complaint in the light most favorable to Plaintiffs, accept as true all well-pleaded facts and draw reasonable inferences in their favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013); *Long v. Shorebank Development Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Statements of law, however, need not be accepted as true. *Yeftich*, 722 F.3d at 915. Rule 12(b)(6) limits this Court's consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). To survive Defendants' motion under Rule 12(b)(6), the Complaint must "state a claim to relief that is plausible on its face." *Yeftich*, 722 F.3d at 915. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.    Analysis

### A. Standing: Plaintiff Miles

Defendants argue that Plaintiff Miles lacks standing to bring a Section 1983 claim because the Complaint does not allege that he suffered any damages, only

that Lilah's suffered damages.  A corporate shareholder does not have a right of action to sue for injuries that are actually suffered by the corporation and only derivatively by the individual – even where the harm is a financial one that ultimately affects the shareholder.  *Peterson v. Vill. of Downers Grove*, No. 14 C 09851, 2015 WL 1929737, at *4 (N.D. Ill. Apr. 27, 2015).  In other words, a "plaintiff-shareholder cannot maintain a civil rights action for damages suffered by the corporation." *Flynn v. Merrick*, 881 F.2d 446, 450 (7th Cir. 1989).  This is true even in the case of close corporations. *Peterson*, 103 F. Supp. 3d at 925.  Filing suit under Section 1983 "does not diminish the requirement that the shareholder suffer some individual, direct injury." *Flynn*, 881 F.2d at 450.

To avoid *Flynn*'s well-settled rule, Miles alleges that he suffered individual damages, distinct from the corporation, in that: (1) he had a protected liberty interest in pursuing his career by running Lilah's and the Defendants deprived him of that interest; and (2) he suffered financially and emotionally when Defendants deprived him of his source of income.  Am. Compl. ¶¶ 19, 21, 24.  Both arguments are unavailing.

The first type of damage is not cognizable because there is no protected liberty interest in operating a business as a tavern. *Scott v. Kewskum*, 786 F.2d 338 (7th Cir. 1986).  In *Scott*, the Seventh Circuit found that there is generally a liberty interest in working in "the common occupations of the community." *Id*. Nevertheless, when a state regulates an occupation it is otherwise empowered to extinguish (such as operating a tavern), then it has removed the liberty interest in

4

that occupation. *Id.* at 341. As such, Miles had no liberty interest in operating a tavern. *Id.* Without a protected liberty interest, there is no injury here.

Miles advances his second claim for damages on two different grounds: (1) that he suffered financial and emotional damages *individually* when Lilah's was shut down; and (2) that he was damaged as Lilah's "alter ego." With regard to his individual damages, Miles argues that his injuries are actually distinct from those of the corporation, and that he therefore falls under an exception to the plaintiff-shareholder rule from *Flynn*. Pl.'s Resp. Br. p. 9. According to Miles, he suffered financially and emotionally because "[Defendants] deprived him of his source of income" by seizing the Licenses and forcing the closure of Lilah's. Am. Compl. ¶ 24.

This is not sufficient to show that Miles suffered an individual injury. The rule in Illinois is that a "stockholder of a corporation has no personal or individual right of action against third persons for damages that result indirectly to the stockholder because of an injury to the corporation." *Kush v. Am. States Ins. Co.*, 853 F.2d 1380, 1383 (7th Cir. 1988). Illinois cases construe this rule strictly. *Id.* Miles' argument here runs directly counter to the holding in *Kush*. Miles allegedly was injured when the Defendants wronged Lilah's by taking the Licenses. As a result, the corporation was shut down for two days and stopped generating money; leaving Miles without the income he would have received as the sole shareholder of the corporation. Miles' financial and emotional harm here were thus the indirect result of an injury to the corporation, and therefore are not sufficiently distinct from the corporation's own injury. *See Amber Pyramid, Inc. v. Buffington Harbor*

5

*Riverboats, L.L.C.*, 129 F. App'x 292, 294 (7th Cir. 2005) ("Shareholders lack standing to sue third parties for indirect damages resulting from injuries to corporations"). To allow Miles to proceed on these theories of injury would improperly stretch the bounds of corporate law in Illinois by allowing any shareholder to bring suit where he was harmed by the corporation's loss of profits. *Domanus v. Lewicki*, 645 F. Supp. 2d 697, 702 (N.D. Ill. 2009).

Alternatively, Miles argues that he was acting as the "alter ego" of Lilah's such that Lilah's injuries are his own. Miles misunderstands the "alter ego" doctrine. Under Illinois law, corporations and limited liability companies exist as separate legal entities from their officers, shareholders and directors; and those individuals are not held personally liable for the corporation's obligations. *Judson Atkinson Candies v. Latini–Hohberger Dhimantec*, 529 F.3d 371, 378 (7th Cir. 2008). In certain circumstances, however, a court may pierce that corporate veil and allow suit against individual officers or shareholders where: (1) "the corporation is merely the alter ego or business conduit of the governing or dominant personality," *Hystro Products, Inc. v. XNP Corp.*, 18 F.3d 1384, 1390 (7th Cir. 1994); and (2) adherence to the "fiction of separate corporate existence would sanction a fraud or promote injustice." *Great Lakes Overseas v. Wah Kwong Shipping Group*, 990 F.2d 990, 996 (7th Cir. 1993). Thus, the alter ego theory allows plaintiffs to bring suit against the individual shareholders or officers despite the corporate structure.

Here, Plaintiff Miles does not seek to pierce the Defendants' corporate veil. Instead, he seeks to escape Lilah's corporate veil and bring suit personally for injuries to the corporation. Put otherwise, Miles seeks to use the "alter ego" theory to allow an individual shareholder to pursue relief based upon injuries to a corporation. Plaintiffs have cited no case law in support of this novel proposition, which is not surprising given that Plaintiffs' position runs directly contrary to *Flynn* and the related case law cited above. As such, the Court finds that Plaintiff did not suffer individual damages as the "alter ego" of Lilah's. Even if Plaintiffs could somehow invert the "alter ego" doctrine to support their approach here, their argument would nonetheless fail as they have not satisfied the second prong required to pierce the corporate veil. They have not alleged facts showing that the "fiction of separate corporate existence . . . sanction[s] a fraud or injustice." *Great Lakes Overseas*, 990 F.2d at 996.

Since Plaintiff Miles has not alleged that he personally suffered any injury in fact, he does not have standing to pursue his Section 1983 claims. *J.P. Morgan Chase Bank, N.A. v. McDonald*, 760 F.3d 646, 650 (7th Cir. 2014). Therefore, Counts I, II, and III are dismissed as to Miles. The First Amendment claim in Count IV, which is brought by Miles alone, is dismissed in its entirety. Those counts are dismissed without prejudice.

### B. Village of Dolton

Defendants argue that Plaintiffs have not adequately alleged Section 1983 claims against the Village of Dolton. The Court agrees. First, Plaintiffs may not

state a claim against the Village under a theory of *respondeat superior* because a municipality cannot be liable under Section 1983 by way of vicarious liability. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) ("A municipality cannot be held liable solely because it employs a tortfeasor"); *Mordi v. Zeigler*, 770 F.3d 1161, 1165 (7th Cir. 2014). Second, Plaintiffs have not adequately alleged municipal liability under a *Monell* theory. To plead a cause of action against a municipality under Section 1983 and *Monell*, Plaintiffs must allege facts showing that the execution of a government policy, custom or widespread practice inflicted the constitutional violation at issue. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *Pindak v. Dart*, No. 10 C 6237, 2015 WL 5081363, at *25 (N.D. Ill. Aug. 27, 2015). Here, Plaintiffs have not alleged that the Defendant Officers were acting in accordance with any such policy, custom or practice. Plaintiffs thus have failed to state a claim under *Monell*. As such, Counts I, II, and III against the Village of Dolton are dismissed without prejudice.

## C. Waiver of Constitutional Challenges

Defendants argue that Plaintiffs waived their right to bring an action under Section 1983 because they had an opportunity to appeal the municipal noise violation to state court and raise the constitutional claims there, but failed to do so. In support of their position, Defendants cite to *Holstein v. City of Chicago*, 803 F.Supp. 205, 210-11 (N.D. Ill. 1992). In *Holstein*, the plaintiff brought a Section 1983 suit in the Northern District of Illinois challenging the towing of his car and the post-tow procedural hearings provided by the City of Chicago. *Id.* at 210.

Plaintiff claimed that those actions, which were governed by Chicago Municipal Code § 9-92-030, were arbitrary and in violation of his due process rights. *Id*. at 207. The City argued that plaintiff had waived his constitutional challenge by failing to challenge the post-tow administrative determination in an appeal to Illinois state court. *Id*. at 210. The district court agreed, finding that the state appellate court would have reviewed "all questions of fact and law contained in the record before the court, including de novo review of any constitutional issues." *Id*. Because plaintiff had failed to raise his due process claims regarding the administrative determination in a state court appeal of that determination, and the time to do so had lapsed, the court found that plaintiff had waived his constitutional claims. *Id*. at 210-12.

*Holstein* is distinguishable, however, from the matter currently before this Court. In *Holstein*, the plaintiff sought to bring a due process challenge concerning the process he had been afforded in the administrative hearing. *Id*. Thus, it made sense to appeal the administrative determination to a state court, because that court could review "all questions of fact and law contained in the record before the court, including de novo review of any constitutional issues." *Id*. at 210. Here, the administrative review concerned only the propriety of the noise violation. Plaintiffs, however, are not suing in relation to the noise violation. In other words, they are not suing to say that they received insufficient process in regard to the adjudication of the noise violation; or that they suffered some other constitutional harm related to the noise violation. Instead, Plaintiffs' complaint focuses upon a completely

9

different issue – the taking of the Licenses and closure of Lilah's. That issue was not adjudicated in the administrative hearing, nor is there any evidence in the record that would suggest that anything related to the issue was a "question of fact [or] law in the record" before the administrative agency. Therefore, Plaintiffs' failure to appeal their noise violation to state court does not result in the wavier of their constitutional arguments here.

**D. Count I: Substantive Due Process**

Plaintiff Lilah's alleges that it was deprived of its property interest in its Licenses in violation of its substantive due process rights when the Defendant Officers seized the Licenses without a hearing. Am. Compl. ¶¶ 19-21. Both the Supreme Court and the Seventh Circuit have emphasized "how limited the scope of the substantive due process doctrine" is under the law. *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003); *Washington v. Glucksberg*, 117 S.Ct. 2258 at 2267 (1997). To bring a substantive due process claim based on a deprived property interest, the Plaintiff must allege that: (1) the state's decision was arbitrary and irrational; and (2) that the state committed a "separate constitutional violation or that state law remedies are inadequate." *Contreras v. City of Chicago*, 119 F.3d 1286, 1295 (7th Cir. 1997).

As to the first prong, the law presumes "that the decision was reasonable," and not arbitrary or irrational. *Polenz v. Parrott*, 883 F.2d 551, 558 (7th Cir. 1989). The burden thus rests with Plaintiff to overcome this presumption by alleging facts establishing that the decision was "arbitrary and irrational" such that it shocks the

10

conscience. *Khan v. Bland*, 630 F.3d 519, 536 (7th Cir. 2010); *Galdikas v. Fagan*, 342 F.3d 684, 690 (7th Cir. 2003) (conduct must be "intended to injure in some way unjustifiable by any government interest."); *Burrell v. Kankakee*, 815 F.2d 1127, 1129 (7th Cir. 1987) (an action cannot be arbitrary and irrational unless it bears "no substantial relationship to public health, safety or welfare"). According to the Supreme Court, only the most egregious behavior rises to the level of arbitrary and irrational conduct. *Compare Rochin v. California*, 342 U.S. 165, 172 (1952) (forcibly pumping stomach for drugs shocked conscience), *and Wilkins v. May*, 872 F.2d 190, 195 (7th Cir. 1989) (extorting confession at gunpoint shocked conscience), *with Christensen v. County of Boone*, 483 F.3d 454, 464-65 (7th Cir. 2007) (alleged trailing of couple in squad car to annoy and intimidate did not shock conscience), *and United States v. Hollingsworth*, 495 F.3d 795, 802 (7th Cir. 2007) (questioning child at school without mother's presence did not shock conscience).

Plaintiff has failed to assert sufficient facts to show that the Officers' alleged improper actions were so arbitrary and irrational that they shock the conscience. For example, Plaintiff Miles alleges in his Complaint that the improper seizure occurred in conjunction with the Officers issuing him a ticket of some sort. Am. Compl. ¶ 31. Further, the Defendants first Exhibit shows that Miles was cited for a noise violation on the night the Licenses were seized. D. Ex. 1. Such facts demonstrate an objective public health concern that underlying the seizure alleged in the Complaint. Accordingly, without more, the Complaint contains insufficient allegations to allow the Court to infer that the Officers' actions were so arbitrary

11

and irrational as to shock the conscience. Plaintiff has not overcome the presumption of reasonability, so Count I is dismissed without prejudice.

Even if the Court were to find that prong one had been satisfied, it would have serious questions as to whether Plaintiff has plead facts sufficient to fulfill prong two. Under prong two, Plaintiff must allege that "the state committed a separate constitutional violation or that state law remedies are inadequate." *Contreras*, 119 F.3d at 1295. As to the "separate constitutional violation," the Supreme Court has cautioned that when a plaintiff raises a claim pursuant to a liberty interest enumerated in the Bill of Rights, courts should analyze the claim as a potential violation of the specific right, not as a deprivation of substantive due process. *Albright v. Oliver*, 510 U.S. 266, 273 (1994). Because Plaintiff has alleged that the taking of its Licenses violated the First, Fourth and Fourteenth Amendments,[2] it would be more appropriate to analyze Plaintiff's claims under those rights than substantive due process. *Id*. As such, the "separate constitutional violation" option within prong two of the substantive due process test is inapplicable here. Whether Plaintiff has adequately alleged stand-alone constitutional violations, separate and apart from its substantive due process claim, will be analyzed in more detail below.

With regard to the "state law remedies" option within prong two, a "viable substantive due process claim must allege . . . the inadequacy of state law remedies." *Joyce's Fine Arts Acad., Inc. v. City of Chicago*, No. 95 C 4321, 1997 WL 222881, at *5 (N.D. Ill. Apr. 24, 1997) (citing *Porter v. DiBlasio*, 93 F.3d 301, 310

---

[2] The First Amendment claim was dismissed due to lack of standing.

(7th Cir. 1996)). Plaintiffs here have alleged no facts showing the inadequacy of state law remedies, and therefore their substantive due process claim fails on that front as well.

**E. Count II: Unreasonable Seizure Under the Fourth Amendment**

Plaintiff Lilah's alleges that the Officers' confiscation of its Licenses was an unreasonable seizure under the Fourth Amendment. Am. Compl. ¶ 23. Defendants' Motion to Dismiss is denied with regard to Count II because Plaintiff has alleged facts sufficient to state a plausible claim under the Fourth Amendment. *See Yeftich*, 722 F.3d at 915; *Long*, 182 F.3d at 554.

Under the Fourth Amendment, the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." U.S. Const. amend. IV. A "seizure" of property occurs when there is some meaningful interference with an individual's possessory interests in that property. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984); *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 809 (7th Cir. 2005). Furthermore, seizures of "property are subject to 4th Amendment scrutiny even though no search within the meaning of the Amendment has taken place." *Soldal v. Cook County*, 506 U.S. 56, 68 (1992). A "seizure carried out on a suspect's premises without a warrant is *per se* unreasonable unless the police can show that it falls within one of a carefully defined set of exceptions." *Coolidge v. New Hampshire*, 403 U.S. 443, 474 (1971). The suspect's premises includes his "home or office," *id.*, and extends to "businesses and commercial

facilities." *United States v. Sandoval-Vasquez*, 435 F.3d 739, 742 (7th Cir. 2006). Here, it is undisputed that the Defendant Officers did not obtain a warrant before confiscating Plaintiff Lilah's Licenses. Without a warrant, the Officers' conduct is unreasonable unless it is found to fall under one of the exceptions to the Fourth Amendment. The only exception argued by the Defendants here is the "exigent circumstances" exception.

Under the "exigent circumstances" exception, the Court asks "whether it was reasonable for the police officers on the scene to believe, in light of the circumstances they faced, that there was a compelling need to act and no time to obtain a warrant." *Sutterfield v. City of Milwaukee*, 751 F.3d 542, 557 (7th Cir.), cert. denied sub nom. *Sutterfield v. City of Milwaukee, Wis.*, 135 S. Ct. 478 (2014). If so, the seizure does not violate the Fourth Amendment. *Id.* Exigencies recognized by the courts include danger to the occupant of a residence, danger to others, risk that a suspect may escape, police in "hot pursuit" of a fleeing suspect, and to prevent the imminent destruction of evidence. *Id.* Here, there are no facts in the Complaint indicating that there was a compelling need for the officers to act and no time to obtain a warrant. The Officers arrived at Lilah's, spoke with Plaintiff Miles, and then subsequently took the Licenses until the following day. There are no facts showing danger to any person, that the destruction of the Licenses was imminent, or that any other exigency existed justifying the seizure of the Licenses without a warrant. As such, at this early stage of the proceedings, Plaintiff has adequately alleged a violation the Fourth Amendment.

In an attempt to escape this conclusion, Defendants argue that Plaintiff Lilah's Fourth Amendment claim is barred under the *Heck* doctrine because it necessarily implies the invalidity of the noise violation conviction. *See Heck v. Humphrey*, 512 U.S. 477, 487 (1994). The court in *Heck* considered whether a state prisoner could challenge the constitutionality of his conviction in a suit for damages under Section 1983. *Id.* at 478. The court held that:

> "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."

*Id.* at 486-87. By way of example, the court described the following situation: a state defendant is convicted of resisting arrest (*i.e.*, intentionally preventing a police officer from effecting a *lawful* arrest), and then brings a claim for unreasonable seizure under the Fourth Amendment based on that arrest. *Id.* at 486 n.6. In that instance, explained the court, success on the Fourth Amendment claim brought under Section 1983 for wrongful arrest would necessarily imply the invalidity of the conviction for resisting arrest – which required a showing of a lawful arrest.

The Court finds that *Heck* does not apply to the facts as alleged in Plaintiffs' complaint. Plaintiffs' Fourth Amendment claim does not challenge any aspect or element of the municipal noise violation. Instead, it claims that

the seizure of Plaintiffs' Licenses violated the Fourth Amendment because there was no warrant allowing for that seizure, and the seizure was not justified by exigent circumstances. The fact that Plaintiff Miles was adjudicated in violation of a municipal noise ordinance does nothing to: (1) show that there was a warrant; or (2) show that there were exigent circumstances. As such, the noise violation and the Fourth Amendment claim are not in conflict. In other words, it is possible that Plaintiff Miles was guilty of the noise violation, yet still had his Licenses illegally seized. Merely committing a noise violation does not justify any and every seizure by the police. Because finding a Fourth Amendment violation here would not invalidate any part of the noise violation, *Heck* does not apply. Defendants' motion to dismiss Count II is denied.

## F. Count III: Procedural Due Process

Plaintiffs allege that Defendants violated their right to procedural due process under the 14th Amendment when the Defendant Officers confiscated the Licenses without a hearing. Am. Compl. ¶ 26. Defendants' Motion to Dismiss is granted with regard to Count III because Lilah's has failed to allege that state law remedies for the seizure were inadequate.

A procedural due process analysis requires two steps: "The first step requires us to determine whether the plaintiff has been deprived of a protected interest; the second requires a determination of what process is due." *Doherty v. City of Chicago*, 75 F.3d 318, 323 (7th Cir. 1997). The parties agree that Lilah's had a protected property interest in its liquor license. *See Reed v. Vill. of Shorewood*, 704 F.2d 943,

16

948-49 (7th Cir. 1983). Furthermore, the parties do not dispute that the Officers failed to follow the procedures required to confiscate a liquor license under Illinois law. *See* 720 ILCS 5/37-3 (permitting the Liquor Control Commission to revoke a license issued on any premises found to constitute a public nuisance but requiring a full hearing by the Commission before the revocation is allowed); 235 ILCS 5/7-5 (permitting the Liquor Control Commissioner to revoke a license if the licensee violated a city ordinance but requiring a full hearing with the Commissioner before the revocation is allowed).

In certain circumstances, however, where it is impractical to provide pre-deprivation remedies, "post-deprivation remedies are all the process that is due because, as a practical matter, they are the only remedies that the state can be expected to provide." *Doherty*, 75 F.3d at 323. For example, random and unauthorized conduct of a state employee "does not constitute a violation of the Due Process Clause if a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Furthermore, "where matters of health and safety are involved, the State may act first and ask questions later without offending the Due Process Clause." *Contreras v. City of Chicago*, 920 F. Supp. 1370, 1393 (N.D. Ill. Mar. 29, 1996).

Plaintiff Lilah's alleges that the Officers ordered Lilah's to be closed and confiscated the Licenses because of Miles' protest and "attitude." Am. Compl. ¶¶ 12, 13. Not only do the facts as they are alleged indicate that the Officers' actions were random and unauthorized, but they also show that the Officers failed to follow the

17

clearly established state law procedures required to confiscate liquor licenses. This indicates that the seizure was of the kind that the State of Illinois could not have anticipated, making it impractical to provide pre-deprivation procedures. *See Hudson*, 468 U.S. at 533 (finding the intentional destruction of an inmate's personal property during a search by an officer constituted random and unauthorized conduct that made pre-deprivation procedures impracticable); *Michalowicz v. Village of Bedford Park*, 528 F.3d 530, 535 (7th Cir. 2008) (equating random and unauthorized action to a state official's failure to follow the requirements of existing law); *Doherty*, 75 F.3d at 324 (finding random and unauthorized conduct where plaintiff alleged that officers improperly closed her licensed bingo hall because of her political affiliations).

Because the Officers' conduct was random and unauthorized, Plaintiff must either "avail [itself] of the remedies guaranteed by state law or demonstrate the available remedies are inadequate." *Doherty*, 75 F.3d at 323. Plaintiff Lilah's did not pursue any post-deprivation remedies under state law, such as the torts of conversion or replevin. Therefore, Plaintiff was required to allege in its Complaint that those remedies were inadequate in order to proceed on the procedural due process claim. *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 943 (7th Cir. 2010). Plaintiff did not do so here, and therefore has not adequately alleged a violation of its procedural due process rights. Count III is dismissed without prejudice.

### G. Count V: Malicious Prosecution

Plaintiff concedes that the Malicious Prosecution claim must be dismissed. Therefore, Count V is dismissed with prejudice.

### H. Count VI: Claim under 745 ILCS 10/9-102

Defendants move to dismiss Claim VI because there is no underlying claim establishing the liability of the Officers. 745 ILCS 10/9-102 is an Illinois statute that requires that the Village of Dolton indemnify the Defendant Officers for their actions if they were acting in the course and scope of their employment. Because the applicability of this statute depends on a finding of liability for the Officers, and Count IV remains pending against the officers, the Motion to Dismiss Count VI is denied.

## IV.    Conclusion

In light of the foregoing, Defendants' motion to dismiss is granted in part and denied in part as follows:

1. Counts I, II, and III are dismissed without prejudice as to Plaintiff Miles due to lack of standing;

2. Count IV, which is alleged only on behalf of Plaintiff Miles, is dismissed without prejudice due to lack of standing;

3. Counts I, II, III against the Village of Dolton are dismissed without prejudice for failure to adequately allege a *Monell* claim;

4. Count I is dismissed without prejudice as to the Officer Defendants for failure to state a claim;

5. The motion to dismiss Count II is denied with regard to the Officer Defendants;

6. Count III is dismissed without prejudice as to the Officer Defendants for failure to state a claim;

7. Count V is dismissed with prejudice by agreement of the parties; and

8. The motion to dismiss Count VI is denied.

This matter remains set for a status hearing on 3/24/2016 at 9:45 a.m. in Courtroom 1725.

IT IS SO ORDERED

Dated: March 23, 2016

_____
Judge John Robert Blakey
United States District Court