# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| LILAH'S, INC., | |
| Plaintiff, | Case No. 15 CV 5017 |
| v. | |
| SGT. LEWIS LACEY and the VILLAGE OF DOLTON, | Judge John Robert Blakey |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lilah's Restaurant Grill and Banquets, Inc. ("Plaintiff") claims that Sergeant Lewis Lacey ("Lacey"), a police officer for the Village of Dolton, Illinois, unconstitutionally seized its liquor license on March 15, 2015. [35] at 3. Plaintiff further alleges that the Village of Dolton is obligated to indemnify Lacey for any compensatory damages flowing from his unconstitutional behavior, pursuant to 745 ILCS 10/9-102.[1] *Id.* at 4-5.

Defendants have moved for summary judgment [61], and that motion is granted, as explained below.

---

[1] These are the only claims remaining after the Court's previous rulings [32, 54] on Defendants' motions to dismiss.

1

I.   Background

A. Undisputed Facts[2]

Plaintiff owns a bar and restaurant ("Lilah's") located at 14098 Chicago Road in Dolton, Illinois. [62] at 1. Kirby Miles ("Miles") is Lilah's president and owner. *Id.*

During the early morning hours of March 15, 2015, Lilah's was open for business with approximately 100 people eating and drinking liquor on the premises. *Id.* at 2. At approximately 1:43 a.m., the 911 dispatcher assigned to Dolton received multiple phone calls reporting "a large disturbance with numerous subjects fighting" and "a big old fight breaking out" with "possible weapons involved" at Lilah's address. *Id.*

Lacey responded to the subsequent radio dispatch call reporting "a large fight" at Lilah's. *Id.* When Lacey arrived at Lilah's, he observed patrons fighting both inside Lilah's itself and in the restaurant's outdoor areas. *Id.* at 3. Lacey ordered the crowds of people (both inside and outside the restaurant) to leave the premises, which they did. *Id.*

---

[2] Plaintiff's response to Defendants' motion for summary judgment was due January 17, 2017. [60] at 1. Plaintiff, though represented by counsel for the duration of this lawsuit, has failed to file a response brief, a statement of additional facts, or a response to Defendants' statement of facts, as required by Local Rule 56.1. Accordingly, Defendants' Local Rule 56.1 statements are deemed admitted, and those same statements [62] form the basis of this section. *See* L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-19 (7th Cir. 2015) ("The non-moving party's failure to admit or deny facts as presented in the moving party's statement or to cite to any admissible evidence to support facts presented in response by the non-moving party render the facts presented by the moving party undisputed."). The Seventh Circuit "has consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Flint v. City of Belvidere,* 791 F.3d 764, 767 (7th Cir. 2015).

After the patrons dispersed, Lacey spoke with Miles. *Id.* Lacey explained that the police were issuing a citation for excessive noise due to the large disturbance, confiscating Lilah's liquor license (the "License"), ordering the business closed for the remainder of the night, and reporting the incident in a police arrest report. *Id.* Miles then removed the License from the wall and tendered it to the police. *Id.* The excessive noise citation was issued, and Lilah's was closed for the evening. *Id.* at 4. Upon leaving Lilah's, Lacey turned the License over to Dolton's Chief of Police. *Id.*

Later that afternoon, Miles called Riley Rogers, Dolton's Mayor and local liquor control commissioner, regarding the incident. *Id.* at 5-6. Shortly after that conversation, Miles met with Mayor Rogers, the Chief of Police, and two police officers at the Dolton Police Station. *Id.* at 6. After meeting at the police station, Miles, Mayor Rogers, and the police officers went to Lilah's, where Miles showed them videotapes of the early morning fight and interactions between Miles and Dolton police officers. *Id.* Two days later, on March 17, 2015, Lilah's liquor license was returned. *Id.*

The excessive noise citation was upheld during an administrative hearing on September 8, 2015. *Id.* at 4.

**B. The Illinois Liquor Control Act**

Resolving the present motion requires frequent recourse to the Illinois Liquor Control Act ("the Act"), noted in relevant part below for convenience:

> *The mayor* . . . of each city, village or incorporated town or his or her designee . . . *shall be the local liquor control commissioner* for their respective cities, villages, incorporated towns and counties, and shall be charged with the administration in their respective jurisdictions of the appropriate provisions of this Act and of such ordinances and resolutions relating to alcoholic liquor as may be enacted . . . . However, *such mayor*, president of the board of trustees or president or chairman of the county board or his or her designee *may appoint a person or persons to assist him in the exercise of the powers* and the performance of the duties *herein provided* for such local liquor control commissioner.

235 ILCS § 5/4-2 (emphasis added).

> Each *local liquor control commissioner shall also have the following powers*, functions and duties with respect to licenses . . . 1. To grant and or suspend for not more than thirty days or revoke for cause all local licenses issued to persons for premises within his jurisdiction; 2. To enter or *to authorize any law enforcing officer to enter at any time upon any premises licensed hereunder* to determine whether any of the provisions of this Act or any rules or regulations adopted by him or by the State Commission have been or are being violated, *and at such time to examine said premises of said licensee* in connection therewith . . . .

*Id.* at § 5/4-4 (emphasis added).

> *If the local liquor control commissioner has reason to believe that any continued operation of a particular licensed premises will immediately threaten the welfare of the community he may*, upon the issuance of a written order stating the reason for such conclusion and without notice or hearing *order the licensed premises closed for not more than 7 days*, giving the licensee an opportunity to be

4

> heard during that period, except that if such licensee shall also be engaged in the conduct of another business or businesses on the licensed premises such order shall not be applicable to such other business or businesses.

*Id.* at § 5/7-5 (emphasis added).

## II. Legal Standard

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.,* 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *See CTL ex rel. Trebatoski v. Ashland School Dist.,* 743 F.3d 524, 528 (7th Cir. 2014).

## III. Analysis

Plaintiff alleges that Lacey's confiscation of its License was an unreasonable seizure under the Fourth Amendment, which provides that the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. A seizure effectuated without a warrant is *per se* unreasonable, unless the police can show that the seizure falls within a previously delineated exception. *See Coolidge v. New*

5

*Hampshire*, 403 U.S. 443, 474 (1971).  Here, it is undisputed that: (1) Lacey seized the License; (2) the License is property for purposes of constitutional analysis, *see Brunson v. Murray*, 843 F.3d 698, 713 (7th Cir. 2016) ("an Illinois liquor license is a property interest within the meaning of the due process clause"); and (3) Lacey did not obtain a warrant prior to the seizure.

Defendants have two primary arguments on summary judgment: (1) Lacey's seizure of the License was reasonable, pursuant to the "pervasively regulated business" exception to the Fourth Amendment's warrant requirement; and (2) Lacey is entitled to qualified immunity.  The Court addresses qualified immunity first, for reasons that will become apparent.

### A.  Qualified Immunity

To determine whether qualified immunity applies, the Court asks "two questions": (1) "whether the plaintiff's allegations make out a deprivation of a constitutional right"; and (2) "whether the right was clearly established at the time of defendant's alleged misconduct."  *Werner v. Wall*, 836 F.3d 751, 759 (7th Cir. 2016), *reh'g and suggestion for reh'g en banc denied* (Oct. 20, 2016).  The Supreme Court originally "required categorically" that the Court "conduct these two inquiries sequentially in order to avoid stagnation in the development of constitutional law."  *Id.*  In *Pearson v. Callahan*, however, the Supreme Court relaxed this rule, holding that "the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity

analysis should be addressed first in light of the circumstances in the particular case at hand." 555 U.S. 223, 236 (2009).

Multiple factors in this case counsel in favor of addressing the "clearly established" prong of the qualified immunity analysis first: (1) Plaintiff, though represented by counsel, has not filed any response to Defendants' motion for summary judgment; (2) a portion of the Act was recently found unconstitutional by the Illinois Appellate Court, in a decision issued long after the seizure at issue here, *see 59th & State St. Corp. v. Emanuel*, --- N.E.3d ---, 2016 WL 7428114, at *5 (Ill. App. Ct. Dec. 23, 2016); and (3) relatedly, the law governing seizures of this sort is certainly in flux, as discussed below.

### 1. "Clearly Established"

After "qualified immunity is raised, the plaintiff has the burden of establishing that . . . the law concerning the proffered right was clearly established at the time the challenged conduct occurred." *Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015) (internal quotation omitted). If the ostensibly violated constitutional right was "not clearly established, then the official is immune from suit and the claim is dismissed." *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000).

To be clearly established, "at the time of the challenged conduct, the right's contours must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right and existing precedent must have placed the statutory or constitutional question beyond debate." *Chasensky v.*

7

*Walker*, 740 F.3d 1088, 1094 (7th Cir. 2014) (quoting *Humphries v. Milwaukee Cnty.*, 702 F.3d 1003, 1006 (7th Cir. 2012)).

The Seventh Circuit has outlined a three-step progression for determining whether a right is clearly established. First, the Court looks "to controlling Supreme Court precedent and our own circuit decisions on the issue." *Denius*, 209 F.3d at 950. Binding precedent, however, "is not necessary to clearly establish a right." *Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1022 (7th Cir. 2000). Therefore, as a second step, in "the absence of controlling precedent, we broaden our survey to include all relevant caselaw in order to determine 'whether there was such a clear trend in the caselaw that we can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time.'" *Id.* at 951 (quoting *Cleveland–Perdue v. Brutsche,* 881 F.2d 427, 431 (7th Cir. 1989)). A "split among courts regarding the constitutionality of conduct analogous to the conduct in question is an indication that the right was not clearly established at the time of the alleged violation." *Id.* Finally, in "rare cases, where the constitutional violation is patently obvious, the plaintiff may not be required to present the court with any analogous cases, as widespread compliance with a clearly apparent law may have prevented the issue from previously being litigated." *Id*.

Because "there is an almost infinite variety of factual scenarios that may be brought into the courtroom, a plaintiff need not point to cases that are identical to the presently alleged constitutional violation." *Id*. at 950. However, "the contours of the right must have been established so that the unlawfulness of the defendant's

conduct would have been apparent in light of existing law." *Cleveland–Perdue*, 881 F.2d at 430.

Finally, the Court notes that it applies the foregoing Seventh Circuit standard mindful of the Supreme Court's recent *per curiam* decision in *White v. Pauly*, 137 S. Ct. 548 (2017). In that case the Supreme Court found it necessary, in light of its recent series of "opinions reversing federal courts in qualified immunity cases," to "reiterate the longstanding principle that clearly established law should not be defined at a high level of generality." *Id.* at 552 (internal quotation omitted). The Court also re-emphasized that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation omitted); *see also Zinn v. Vill. of Sauk Vill.*, No. 16-CV-3542, 2017 WL 783001, at *4 (N.D. Ill. Mar. 1, 2017) (describing the "exacting standards for denial of qualified immunity" after *White*).

### a) The *Burger* Standard For Warrantless Searches

To determine whether Plaintiff's right to be free of the seizure at issue here was "clearly established," the Court first turns to *New York v. Burger*, 482 U.S. 691 (1987). In *Burger*, the Supreme Court recognized that since the owner of "commercial premises in a 'closely regulated' industry has a reduced expectation of privacy, the warrant and probable-cause requirements, which fulfill the traditional Fourth Amendment standard of reasonableness for a government search, have lessened application." *Id.* at 702 (internal citation omitted). Accordingly, "where the privacy interests of the owner are weakened and the government interests in

9

regulating particular businesses are concomitantly heightened, a warrantless inspection of commercial premises may well be reasonable within the meaning of the Fourth Amendment." *Id.*

*Burger* further explained that this "warrantless inspection, however, even in the context of a pervasively regulated business, will be deemed to be reasonable only so long as three criteria are met." *Id.* First, "there must be a substantial government interest that informs the regulatory scheme pursuant to which the inspection is made. Second, the warrantless scheme must be necessary to further the regulatory scheme. And third, the statute's inspection program, in terms of the certainty and regularity of its application, must provide a constitutionally adequate substitute for a warrant." *United States v. Hamad*, 809 F.3d 898, 905 (7th Cir. 2016) (citing *Burger*, 482 U.S. at 702). Given the record here (including the issue of qualified immunity and the otherwise lawful entry to the public areas of the premises in response to a 911 disturbance call), this Court assumes, but need not ultimately decide in this case, that the Act's administrative inspection scheme satisfies the *Burger* standard.[3]

---

[3] *Burger* authorizes warrantless searches performed pursuant to a regulatory or statutory scheme that satisfies its tripartite test. *See Hamad*, 809 F.3d at 905 (*Burger* sets forth the "standards for warrantless, administrative *inspections* of commercial premises in closely regulated industries.") (emphasis added); *Contreras v. City of Chicago*, 119 F.3d 1286, 1290 (7th Cir. 1997) ("The plaintiffs argue that the inspection failed the test that *New York v. Burger* . . . established for warrantless administrative *searches* pursuant to a regulatory scheme.") (emphasis added). The Act here obviously satisfies *Burger*'s first two criteria. *See 59th & State St. Corp. v. Emanuel*, --- N.E.3d ---, 2016 WL 7428114, at *5 (Ill. App. Ct. Dec. 23, 2016) ("The first and second criteria set forth in *Burger* are not in dispute. There is a substantial governmental interest in regulating the sale of intoxicating liquor and the warrantless search of premises where liquor is sold is arguably necessary to protect the safety of the public from the dangers attendant to the sale of intoxicating liquor.") (internal citation omitted). As previously mentioned, however, the Illinois Appellate Court has determined that a portion of the Act appears to falter on *Burger*'s third hurdle. *See id.* ("[W]e conclude, as did the circuit court, that the provisions of both section 4-4-290 of the Code and section

### (1) Warrantless Seizures Under *Burger*

*Burger* "did not specifically address whether the *seizure* of the items, not expressly permitted by the statute, was a violation of the Fourth Amendment." *See Copar Pumice Co. v. Morris*, No. CIV 07-79, 2008 WL 2323488, at *12 (D.N.M. Mar. 21, 2008) (emphasis added). Other federal courts, however, have answered *Burger*'s unresolved question by approving of warrantless seizures, during the course of a *Burger* search, in two distinct circumstances.

In the first instance, the seizure remains lawful when it is explicitly contemplated by the same appropriately-tailored statutory scheme that authorized the search in the first place. *See United States v. Argent Chem. Labs., Inc.*, 93 F.3d 572, 577 (9th Cir. 1996) (*Burger*'s exception "extends to seizure without warrant of what may be inspected without warrant, *when Congress so authorizes*.") (emphasis added); *see also Golden Day Sch., Inc. v. Pirillo*, 118 F. Supp. 2d 1037, 1045 (C.D. Cal. 2000) (For "the pervasively regulated business exception to the warrant requirement to apply not only to searches but also to seizures, *the statutory regulation must expressly authorize seizures*.") (emphasis added).

In the second circumstance, the law enforcement officer conducting a *Burger* search must have an independent constitutional basis to seize property uncovered

---

4-4(2) of the Liquor Control Act in effect when the plaintiff's premises was searched failed to satisfy the reasonableness requirement for a search under the fourth amendment," insofar as they allowed the officers to enter licensed premises "*at any time* to investigate any potential violations of the law.") (emphasis added). This Court declines to make a similar determination here, however, in light of: (1) this case's underdeveloped record; and (2) the Court's ultimate conclusion regarding Lacey's entitlement to qualified immunity. *See Doe v. Heck*, 327 F.3d 492, 516 (7th Cir. 2003), *as amended on denial of reh'g* (May 15, 2003) ("Although we conclude that [the relevant statute] is unconstitutional as applied to Greendale and John Doe Jr., we are not prepared to hold that this statutory subsection is so patently unconstitutional as to deny the defendants qualified immunity from their claims.").

during the course of his warrantless inspection. *See Hamad*, 809 F.3d at 905 (approving of the warrantless search of defendant's cigarette store under *Burger*, while analyzing the seizure of guns and pills found during the search using the doctrine of probable cause); *Anderton v. Texas Parks & Wildlife Dep't*, 605 F. App'x 339, 345 (5th Cir. 2015) ("Department officials had lawful access to the entire enclosure [under *Burger*]. Even if the [illegal] deer were located in areas obscured by tall grasses and trees, the officials were allowed to venture into such areas and, once there, the deer would have been in plain view."); *Stegall v. Russo*, 138 F. App'x 884, 885 (8th Cir. 2005) ("In the course of the [warrantless *Burger*] search, they had authority to ask Stegall if she had a weapon. Because she answered, 'I might,' . . . and a weapon had just been recovered from her boyfriend . . . officers were authorized to conduct a protective pat-down search for safety."); *see also United States v. Biswell*, 406 U.S. 311, 312-17 (1972) (the relevant statute permitting warrantless searches of certain businesses did not specifically authorize the seizure of items located during an inspection, but seizure of two sawed-off rifles revealed during inspection was constitutional).

In this case, Defendants have not articulated an independent constitutional basis for the seizure of the License. Instead, Defendants insist that the seizure was authorized by the Act, under *Burger*'s "pervasively regulated business" exception. The Court accordingly turns to the text of the statutory scheme at issue.

### (2) Plaintiff's Rights Under The Act Are Not Clearly Established

The Act explicitly grants Mayor Rogers, as the local liquor control commissioner, the unilateral authority to temporarily "revoke or suspend" any liquor license issued by the Village of Dolton, if he determines that the licensee's continued operation constitutes an immediate threat to the Village's welfare. *See supra* at 4-5. Mayor Rogers was also fully authorized to: (1) "appoint . . . persons to assist him"; and (2) "authorize" police officers to "enter" and "examine" licensed premises. *Id.*

Thus, under *Burger* and the explicit language of the Act, Lacey was authorized to inspect Lilah's. It is similarly clear that Mayor Rogers, at least, was imbued with the authority to unilaterally seize the License, given Lilah's undisputed violation of the Village's noise ordinance and the large fight taking place on the premises. *See supra* at 2-5. It is not clear, however, whether *Lacey* was similarly empowered to seize the License under the Act.

On the one hand, Lacey was clearly allowed "examine" the premises and "assist" Mayor Rogers in the exercise of his duties, which included the unilateral revocation of certain licenses for the sake of the Village's welfare. *Id.* at 3-5. As Defendants point out, it would make little sense to craft a statutory scheme under *Burger* that: (1) explicitly grants the Mayor authority for unilateral seizures; and (2) allows the Mayor the delegate his powers, only to conclude that the Mayor may not delegate this specific power that turns on threats to the Village's welfare. *See* [64] at 11 (would be "wholly impractical and contrary to the [Act's] reasonable

regulatory scheme to require that Sgt. Lacey obtain a . . . on-site temporary closure order from the Mayor, especially where Sgt. Lacey was merely assisting in the enforcement of the [Act].").

Conversely, the portion of the Act enumerating the Mayor's delegable powers does not specifically cite his ability to unilaterally suspend or revoke licenses, which might suggest that this ability was not delegated to the officers enforcing the provisions. *See Anderson v. Am. Gen. Life Ins. Co.*, 19 F. Supp. 3d 785, 789-90 (N.D. Ill. 2013) ("Under the maxim *expressio unius est exclusio alterius* . . . when certain things are enumerated in a statute, the enumeration implies the exclusion of all other things even if there are no negative words of prohibition.") (internal quotation omitted). Adding more uncertainty, the portion of the Act authorizing the Mayor to unilaterally revoke or suspend a license also requires a written statement, which apparently was never issued in this case. *See supra* at *4-5.

The Court declines to venture any further into this thicket. The obvious ambiguities here cry out for the application of qualified immunity, which "protects police officers who reasonably interpret an unclear statute." *Thayer v. Chiczewski*, 705 F.3d 237, 247 (7th Cir. 2012) (internal quotation omitted); *see also Neita v. City of Chicago*, 830 F.3d 494, 499 (7th Cir. 2016) ("An official who reasonably relies on a facially valid state law may be entitled to qualified immunity if his conduct is later challenged."). The Court's "inquiry is aimed at determining whether a reasonable person in the officer's position would have understood his actions to be against the law at the time he acted," *Canen v. Chapman*, 847 F.3d 407, 412 (7th Cir. 2017),

14

and a reasonable officer in Lacey's position could have easily concluded, given the obvious threats to the Village's welfare posed by Lilah's on the morning of March 15, 2015, that they were empowered to seize the License under the Act.

Finally, the Court reiterates that it was *plaintiff's* obligation to establish that "the proffered right was clearly established at the time the challenged conduct occurred." *Burritt*, 807 F.3d at 249. Given the muddied state of the law governing warrantless seizures and Plaintiff's total failure to respond to Defendants' motion, the Court is left with one conclusion: Lacey is entitled to qualified immunity.

### IV. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment [61] is granted.[4] The Clerk is directed to enter Rule 58 judgment in favor of Defendants and against Plaintiff. Civil case terminated.

Date: March 31, 2017

Entered:

John Robert Blakey
United States District Judge

---

[4] Since Lacey is not liable for the underlying seizure, Plaintiff's indemnification claim against the Village of Dalton is similarly untenable. *See Rebolar ex rel. Rebolar v. City of Chicago*, 897 F. Supp. 2d 723, 742 (N.D. Ill. 2012) ("Illinois law exempts public entities from liability 'for any injury resulting from an act or omission of its employee where the employee is not liable.' Because the Court concludes that the defendant officers are entitled to summary judgment on all claims, plaintiff has not established the employee liability necessary for indemnification.") (quoting 745 ILCS § 10/2–109).